1

2

3

4               IN THE UNITED STATES DISTRICT COURT

5             FOR THE EASTERN DISTRICT OF CALIFORNIA

6

7

CLARENCE GIBSON,
8          Plaintiff,                    CV F 00 5381 AWI WMW   P

9                                        ORDER RE MOTION FOR SUMMARY
                                         JUDGMENT (DOC 121 )
10          vs.

11

GEORGE GALAZA, et al.,
12          Defendants.
_____/
13

14

15                    **BACKGROUND**

16          Plaintiff is a state prisoner proceeding pro se.  Pending before the court is

17 Defendants motion for summary judgment.

18          This action proceeds on the March 29, 2004, first amended complaint against

19 defendant Walker for excessive force.[1]  Plaintiff's allegations as to defendant  Walker, as

20 articulated in the original complaint, follow:

21          On or about 1-5-2000 I were [sic] forced with a cellmate.  I told an
           unknown Sgt. that I'm not compatible with cellies. I had about
22          nine cellmates in one year and they have all ruin my program and
           disturbed my peace.  I'm tired of being force to live with another
23          man, I don't even know. The unknown Sgt. called Lt. Walker,
           when Lt. Walker came, he told me, if I don't agree to live with
24          another man, they going to kick my ass.  After that, Lt. Walker

25          _____

26          [1] Defendants Decker and Galaza were dismissed by order of May 3, 2002.

                              1

1  swung on me and almost knock me out, then; after that Lt. Walker
   and fellow officers beat me to the ground with hands and feets.
2  After I was down on the floor in handcuffs, Lt. Walker kicked me
   in the ribs a few times and said, next time I better accept another
3  cellie.

4      The court directed service of process of the original complaint.  Plaintiff then

5  withdrew the original complaint and, with leave of court, filed a first amended complaint.

6  Defendant Walker filed the motion for summary judgment now before the court.  Plaintiff has

7  opposed the motion.

8                                    **LEGAL STANDARD**

9      Summary judgment is appropriate when it is demonstrated that there exists no

10 genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter

11 of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v.

12 Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710

13 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th

14 Cir. 1984).

15     Under summary judgment practice, the moving party
       [A]lways bears the initial responsibility of informing the district
16     court of the basis for its motion, and identifying those portions of
       "the pleadings, depositions, answers to interrogatories, and
17     admissions on file, together with the affidavits, if any," which it
       believes demonstrate the absence of a genuine issue of material
18     fact.

19 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

20 burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

21 in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

22 file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

23 upon motion, against a party who fails to make a showing sufficient to establish the existence of

24 an element essential to that party's case, and on which that party will bear the burden of proof at

25 trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

26

1   nonmoving party's case necessarily renders all other facts immaterial." Id. In such a

2   circumstance, summary judgment should be granted, "so long as whatever is before the district

3   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

4   satisfied." Id. at 323.

5           If the moving party meets its initial responsibility, the burden then shifts to the

6   opposing party to establish that a genuine issue as to any material fact actually does exist.

7   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of

8   Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607

9   F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

10          In attempting to establish the existence of this factual dispute, the opposing party

11  may not rely upon the mere allegations or denials of its pleadings, but is required to tender

12  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

13  support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11;

14  First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The

15  opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

16  affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

17  242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

18  Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

19  return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem

20  Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

21          In the endeavor to establish the existence of a factual dispute, the opposing party

22  need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

23  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

24  versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at

25  631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof

26

1   in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting

2   Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of

3   Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

4          In resolving the summary judgment motion, the court examines the pleadings,

5   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

6   any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th

7   Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and

8   all reasonable inferences that may be drawn from the facts placed before the court must be drawn

9   in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,

10  369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208

11  (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing

12  party's obligation to produce a factual predicate from which the inference may be drawn.

13  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d

14  898, 902 (9th Cir. 1987).

15         Finally, to demonstrate a genuine issue, the opposing party "must do more than

16  simply show that there is some metaphysical doubt as to the material facts....  Where the record

17  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

18  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### DISCUSSION

20         The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor

21  excessive fines imposed, nor cruel and unusual punishments inflicted."  The proscription applies

22  to the states through the Due Process Clause of the Fourteenth Amendment.  Robinson v.

23  California, 370 U.S. 660 (1962).  Prison brutality is part of the total punishment to which the

24  individual is being subjected for his crime and, as such, is a proper subject for Eighth

25  Amendment scrutiny.  Ingraham v. Wright, 430 U.S. 651, 669, (1977).  The Eighth Amendment

26

1   is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions

2   and serves as the primary source of substantive protection to convicted prisoners in cases where

3   the deliberate use of force is challenged as excessive and unjustified.  Whitley v. Albers, 475

4   U.S. 312, 327,(1986); see also Graham v. Connor, 490 U.S.386, 392 n.10 (1989).

5            To constitute the "unnecessary and wanton infliction of pain" in the prison

6   context, the United States Supreme Court requires that both the objective and subjective

7   component of the Eighth Amendment be satisfied.  Wilson v. Seiter, 501 U.S. 294 (1991).  First,

8   the deprivation complained of must be sufficiently serious by objective standards.  Id. 501 U.S. at

9   297.  A deprivation is sufficiently serious if it denies "'the minimal civilized measure of life's

10  necessities.'"  Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (violation requires

11  showing of unnecessary and wanton infliction of pain resulting in a physical injury which is of

12  such base, inhumane and barbaric proportions as to shock the sensibilities)).  See Hudson v.

13  McMillian, 503 U.S.1,(1992) (objective prong not met where injury is de minimus); but see,

14  Jordan v. Gardner, 986 F.2d 1521 (9th Cir. 1993) (Hudson substantial injury requirement met by

15  psychological harm alone, such that body searches of female inmates by male guards constitutes

16  cruel and unusual punishment).

17           Second, the prison officials responsible for the deprivation must act with a

18  sufficiently culpable state of mind by subjective standards.  Id.  To be sufficiently culpable, "the

19  offending conduct must be wanton."  Wilson, 501 U.S. at 299.  In situations where officials are

20  not acting under pressure, "deliberate indifference" constitutes wantonness.  Id. at 299-300.

21           Where a prison security measure is undertaken to resolve a disturbance, the

22  question of whether the measure taken inflicted unnecessary and wanton pain and suffering in

23  violation of the Eighth Amendment turns on whether force was applied in a good faith effort to

24  maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm.

25  Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

26

1        The law makes clear that a mere dispute over the reasonableness of a particular

2   use of force or the existence of arguably superior alternatives does not amount to a triable issue

3   of fact. Whitley v. Albers, id., 475 U.S. 319.  Further, physical force used by prison staff against

4   inmates does not constitute an Eighth Amendment violation when it is used in proportion to the

5   requirements of a given situation. Hoptowit v. Ray, 682 F. 2d 1237, 1251 (9th Cir. 1982).

6        Further, prison officials are to be accorded "wide-ranging deference" as they

7   "must make their decisions 'in haste, under pressure, and frequently without the luxury of a

8   second chance.'" Hudson, 501 U.S. at 6.  This is so because "prison officials are authorized and

9   indeed required to take appropriate measures to maintain prison order and discipline and protect

10  staff and other prisoners from such violent behavior" when inmate become disruptive. LeMaire

11  v. Masss, 12 F.3d 1444, 1458 (9th  Cir. 1993).

12       Here, the facts alleged indicate that force was used to maintain or restore

13  discipline - the facts of the complaint indicate that plaintiff was refusing a direct order, and

14  specifically advised correctional officials that he would not accept a cellmate.  In order to meet

15  their burden on summary judgment, defendant must come forward with evidence that establishes

16  the lack of existence of a triable issue of fact - evidence that force was not applied maliciously or

17  sadistically, or for the very purpose of causing harm.

18       Defendants support their motion with the following undisputed facts:

19  1.  In January 2000, CSP Corcoran was at full capacity requiring that inmates be double celled to

20  the extent possible.  Defendant's Exhibit A, declaration of Lt. Walker; ¶ 2, Exhibit B, declaration

21  of Sergeant Cooke, ¶ 2.

22

23  2. In January 2000, plaintiff was housed in Facility II-A, in Building 3A.  Defendant's Exhibit A,

24  ¶ 3;  Exhibit B, ¶ 3; Exhibit C, declaration of B. Rankin, ¶ 3; Exhibit D, declaration of A.

25  Bowman, ¶ 3.

26

3.  Plaintiff was cleared for double-cell occupancy by the Institutional Classification Committee (ICC). Def.'s Exh. A, ¶ 4.

4.  On January 5, 2000, Inmate Mims, CDC # J-95225, arrived from another institution, was processed through Receiving and Release, and was cleared for housing.  Def.'s Exh. A, ¶ 4; Exh. B, ¶ 4.

5.  At the time of his arrival, the only available cell to house inmate Mims was with plaintiff in cell 3A04-206U.  Both inmate Mims and plaintiff were cleared for double cell occupancy by the ICC.  Def.'s Exh. A, ¶ 4; Exh. B, ¶ 4.

6.  Lieutenant Walker reviewed both inmates' files and determined that inmate Mims could safely be housed with inmate Gibson.  Def.'s Exh. B, ¶ 5.

7.  Sergeant Cooke informed plaintiff that he was going to receive a cellmate.  Def.'s Exh. B, ¶ 5.

8.  Plaintiff refused to accept a cellmate.  Def.'s Exh. B, ¶ 5.

9.  Sergeant Cooke attempted to counsel plaintiff on the housing unit procedures, but plaintiff was unreceptive.  Def.'s Exh. B, ¶ 6; Exh. C, ¶ 4; Exh. D, ¶ 4.

10.  Plaintiff told Sergeant Cooke to take him to Administrative Segregation because he was not going to accept a cellmate.  Def.'s Exh. B, ¶ 6.

11.  Sergeant Cooke asked inmate Gibson if he had a problem with inmate Mims.  Inmate Gibson

said that he knew who inmate Mims was and that he did not have a problem with inmate Mims. Def.'s Exh. B, ¶ 7.

12.  Plaintiff continued to state that he wanted to be single cell status.  Def.'s Exh. B, ¶ 7.

13.  Sergeant Cooke ordered plaintiff to exit his cell numerous time and plaintiff refused.  Def.'s Exh. B, ¶ 8.

14.  Sergeant Cooke ordered plaintiff to exit his cell so that he could escort him to the program office to speak with Lt. Walker.  Plaintiff refused to exit his cell and demanded that Sgt. Cooke bring Lt. Walker to him.  Def.'s Exh. B, ¶ 9.

15.  Plaintiff then physically pushed the mechanical cell door in the open locked position.  Def.'s Exh. B, ¶ 10.

16.  On January 5, 2000, at approximately 1950 hours, Lt. Walker was notified by Sgt. Cooke via institutional radio that he needed to report to Building 3A04 to speak with an inmate Gibson. Def.'s Exh. A, ¶ 5; Exh. B, ¶ 12.

17.   When Lt. Walker arrived at the building, he proceeded to Sgt. Cooke's location on the second tier in "A" section in front of Cell 206, where plaintiff was housed.  Def.'s Exh. A, ¶ 5; Exh. B, ¶ 12.

18.   Lt. Walker was briefed by Sgt. Cooke that plaintiff was refusing to accept a cellmate. Def.'s Exh. A, ¶ 5, Exh. B, ¶ 12.

19.   When he arrived at the cell, Lieutenant Walker noted that plaintiff had physically pushed the mechanical door in the locked open position. Def.'s Exh. A, ¶ 6; Exh. H, ¶ 3, Attachment 1: Gibson's Deposition ("Gibson Depo."), December 2, 2004 at 50: 6-15.

20.   At this time, plaintiff appeared agitated, and was boisterous, yelling profanities at the officers. Indeed, inmate Gibson admits he was agitated and yelling profanities at the officers. Def.'s Exh. A, ¶ 6; Exh. B, ¶ 11; and Exh. H, Gibson Depo., at 60:4-20.

21.   Officers Rankin and Bowman proceeded to plaintiff's cell as back-up.   Defendant's Exh. A, ¶ 6; Exh. C, ¶ 6; Exh. D, ¶ 8.

22.   Lieutenant Walker attempted to explain to plaintiff the procedures for  single and double cell status. Defendant's Exh. A, ¶ 7; Exh. B, ¶ 13; Exh. C, ¶ 5; Exh. D, ¶ 8.

23.   Lieutenant Walker informed plaintiff that he could not choose to be on single cell status, that it had to be a committee action. Plaintiff's response was "fuck that, I  told committee I wanted to be on single cell status." Lieutenant Walker told plaintiff that he did not have a choice in designating his cell status. Plaintiff replied, "I ain't accepting no cellies." Lieutenant Walker then explained to plaintiff that if he refused to accept a cellmate, he would be placed in administrative segregation. Defendant's Exhibit A, ¶ 7; Exh. B, ¶ 13.

24.   Lieutenant Walker spoke to plaintiff for approximately ten minutes.   Def.'s Exh. A, ¶ 8; Exh. B, ¶ 13.

25.   Plaintiff admits that Lieutenant Walker did not want to cuff him up and that Lieutenant Walker asked plaintiff to walk over to the program office with him.   Def.'s Exhibit H, Gibson Depo., at 51:16-22.

26.   After plaintiff repeatedly refused to accept inmate Mims as a cellmate, Lieutenant Walker ordered plaintiff to exit the cell in order to be placed in handcuffs and to be  escorted to administrative segregation. Plaintiff refused to comply with his orders and exit the cell. Lieutenant Walker extended his right arm towards plaintiff in a motion to have plaintiff come near the front of the cell in order to be placed in handcuffs.  Def.'s Exh. A, ¶ 9; Exh. B, ¶ 15; Exh. C, ¶¶ 5; Exh. D, ¶ 9; and Exh. H, Gibson Depo., at 52:1-9.

27.   Without notice or provocation, Plaintiff grabbed Lieutenant Walker's right  arm and pulled him inside the cell. Def.'s Exh. A, ¶ 10; Exh. B, ¶ 17; Exh. C, ¶ 6; and Exh. D, ¶ 10.

28.   Responding Officers Bowmen, Rankin, and Cooke then entered the cell to assist Lieutenant Walker. Defendant's Exh. A, ¶ 11; Exh. B, ¶ 18 ; Exh. C, ¶ 7; and Exh. D , ¶ 11.

29.   Lieutenant Walker was able to break free from plaintiff's grasp as plaintiff turned towards responding staff and forcefully pushed himself against the responding staff members and continued to push them outside the cell and onto the tier. Defendant's Exh. A, ¶12; Exh. B, ¶ 19; Exh. C, ¶ 7; and Exh. D, ¶ 11.

30.   Plaintiff admits that he resisted staff and that he pushed and rammed himself out of the cell onto the tier. Def.'s Exh. H, Gibson Depo., at 58:1-11; 47:14-25 and 89:18-21.

1    31.   Plaintiff continued to resist staff by kicking his legs and pulling his arms away from staff. It

2    took four officers to subdue inmate Gibson. Def.'s Exh. A, ¶ 13; Exh. B, ¶ 20; Exh. C, ¶ 8; and

3    Exh. D, ¶ 12.

4

5    32.   Correctional Officers Rankin and Bowman grabbed plaintiff by his right arm as he forced

6    his way out of the cell. Sergeant Cooke and Lieutenant Walker grabbed plaintiff by his left arm

7    and shoulder area. He was taken down to the floor and placed in a prone position. Lieutenant

8    Walker maintained control of plaintiff's legs once he was placed in the prone position. Officer

9    Juarez grabbed plaintiff's right wrist with his right hand, maintaining control of his wrist. Officer

10   Bowman applied handcuffs on plaintiff's wrists as Sergeant Cooke applied leg restraints on

11   plaintiff's ankles.  Def.'s Exh. A, ¶ 14; Exh. B, ¶ 21; Exh. C, ¶ 9; and Exh. D, ¶ 13.

12

13   33.   The officers, including Lieutenant Walker, did not know what plaintiff intended as he pulled

14   Lieutenant Walker into his cell. The officers were concerned for their safety as well as Lieutenant

15   Walker's safety. Indeed, responding staff viewed plaintiff's action as an aggressive move. Def.'s

16   Exh. A, ¶ 15; Exh. B, ¶ 22; Exh. C, ¶ 10; and Exh. D, ¶ 14.

17

18   34.   Plaintiff's aggressiveness increased as he continued to resist staff and push them out onto

19   the tier. Def.'s Exh. A, ¶ 16; Exh. B, ¶ 23; Exh. C, ¶ 11; and Exh. D, ¶ 15.

20

21   35.   Plaintiff was restrained, escorted to the 3A Program Office and secured in a holding cell by

22   Sergeant Cooke and Correctional Officer Roper. Def.'s Exh. A, ¶ 17; Exh. B, ¶ 24; Exh. C, ¶ 12;

23   and Exh. D, ¶ 16.

24

25   36.    MTA Jones conducted a medical evaluation of plaintiff and the noted injuries were reported

26

1    on a CDC 7219 medical report. Def.'s Exh. A, ¶ 18; Exh. B, ¶ 25; and Exh. E.

2

3    37.   Plaintiff sustained the following injuries: a small cut on his lower lip, pain to his left side of

4    temple, superficial abrasion to the left inner wrists, numbness to the left thumb, small hematoma

5    to the right knee, an abrasion to the right outer ankle, abrasion on the left knee and an abrasion to

6    the left elbow. Def.'s Exh. A, ¶ 19; Exh. B, ¶ 26; and Exh. E.

7

8    38.   Plaintiff suffers emotional and psychological injuries as a result of this incident. Def.'s Exh.

9    H, Gibson's Depo., at 76:18-25.

10

11   39.   Plaintiff was medically cleared and rehoused in administrative segregation without further

12   incident. Def.'s Exh. A, ¶ 20; Exh. B, ¶ 27; Exh. C, ¶ 14; Exh. D, ¶ 18; and Exh. E.

13

14   40.   Lieutenant Walker sustained redness and swelling of his right wrist area. Officer Rankin

15   sustained redness to his right shoulder with slight pain. Sergeant Cooke sustained moderate

16   swelling to his right hand. Def.'s Exh. A, ¶ 21; Exh. B, ¶ 28; Exh. C, ¶ 13; and Exh. E.

17

18   41.   All staff members were medically examined and cleared to continue their duties.  Def.'s

19   Exh. A, ¶ 21; Exh. B, ¶ 28; and Exh. E.

20

21   42.   On the day of the incident, Lieutenant Walker filled out an incident report.  Def.'s Exh. A, ¶

22   22; and Exh. F.

23

24   43.   Plaintiff received a Rules Violation Report (CDC 115), log number 3A-00- 01-012,

25   charging him with violating the California Code of Regulations, Title 15, section 3005(c), Force

26

1   and Violence, specifically for Battery on a Peace Officer. Def.'s Exh. A, ¶ 23; Exh. B, ¶ 30 and

2   Exh. G.

3

4   44.   Plaintiff was found guilty of this charge on February 6, 2000. Def.'s Exh. A, ¶ 24; and Exh.

5   G.

6

7   45.   Plaintiff admits that he has been issued quite a few rules violation reports for refusing to

8   accept a cellmate and that he had one prior rules violation report for assaulting staff. Def.'s Exh.

9   H, Gibson's Depo., at 29:14-22 and 97:11-16.

10

11   46.   In the subject incident, Lieutenant Walker and the other responding officers used the

12   minimum force that they believed was necessary to bring plaintiff under control.  Def.'s Exh. A,

13   ¶ 25; Exh. B, ¶ 32; Exh. C, ¶ 16; and Exh. D, ¶ 19.

14

15   47.   Neither Lieutenant Walker nor any other officer struck, kicked, or swung at plaintiff.

16   Rather, the correctional officers merely subdued plaintiff and held him down until they could

17   apply the appropriate restraints. Def.'s Exh. A, ¶ 26; Exh. B, ¶ 33; Exh. C, ¶ 17; and Exh. D, ¶

18   20.

19          Defendant argues that plaintiff, without notice or provocation, grabbed his right

20   arm and pulled him inside the cell.  Defendant alleges that the force used by him was a measured

21   response to the situation, and that he acted in a defensive manner.  Defendant further notes that

22   plaintiff, in pushing defendant and other responding staff on to the tier, was engaging in an even

23   more aggressive move.

24          Defendant offers the following evidence to establish that the force used was a

25   defensive response intended to defend himself from plaintiff's provocation.

26

1        Defendant's Exhibit A, the declaration of defendant Lt. Walker.  Lt. Walker

2    declares that:

3        I noted that inmate Gibson had physically pushed the mechanical
         door in the open locked position.  Inmate Gibson was agitated,
4        boisterous and yelling profanities.  Officers Rankin and Bowman
         proceeded to the cell as back-up.

5
         I attempted to explain to inmate Gibson the procedures for single
6        and double cell status.  I informed Gibson that he could not choose
         to be single cell status, that it had to be a committee action.  Inmate
7        Gibson's response was "fuck that, I told committee I wanted to be
         on single cell status."  I told inmate Gibson that he did not have a
8        choice in designating his cell status.  He replied, "I ain't accepting
         no cellies."  I then explained to inmate Gibson that if he refused to
9        accept a cellmate, he would be placed in administrative
         segregation.

10
         I spoke to inmate Gibson for approximately ten minutes.

11
         After inmate Gibson continually refused to accept inmate Mims as
12       a cellmate, I ordered inmate Gibson to exit the cell in order to be
         placed in handcuffs and to be escorted to administrative
13       segregation.  Inmate Gibson refused to comply with my orders and
         exit the cell.  I extended my right arm towards inmate Gibson in a
14       motion to have inmate Gibson come near the front of the cell in
         order to be placed in handcuffs.

15

16       Without notice or provocation, inmate Gibson grabbed my right
         arm and pulled me inside the cell.

17
         Responding officers Bowman, Rankin and Cooke entered the cell
18       to assist me.

19       I was able to break free from inmate Gibson's grasp as inmate
         Gibson turned towards responding staff and forcefully pushed
20       himself against the responding staff members outside the cell and
         onto the tier.

21
         Inmate Gibson continued to resist staff by kicking his legs and
22       pulling his arms away from staff.  It took four officers to subdue
         inmate Gibson.

23
         Correctional Officers Rankin and Bowman grabbed inmate Gibson
24       by his right arm as inmate Gibson forced his way out of the cell.
         Sergeant Cooke and I grabbed inmate Gibson by his left arm and
25       shoulder area.  Inmate Gibson was taken down to the floor and
         placed in a prone position.  Officer Juarez grabbed inmate

26
                                    14

Gibson's right wrist with his right hand, maintaining control of his wrist.  Officer Bowman applied handcuffs on inmate Gibson's wrists as Sergeant Cooke applied leg restraints on inmate Gibson's ankles.

I did not know what inmate Gibson intended as he pulled me into his cell, but I was concerned for my safety as well as the safety of the responding officers.  I viewed inmate Gibson's actions as an aggressive move.

Inmate Gibson's aggressiveness increased when he continued to resist staff and pushed three staff members out of the cell onto the tier.

Inmate Gibson was restrained, escorted to the 3A Program Office, and secured in a holding cell by Sergeant Cooke and Correctional Officer Roper.

Def.'s Exh. A, ¶¶ 6-17.   Defendant's argument is also supported by the declarations of Sergeant Cooke, Correctional Officer Rankin and Correctional Officer Bowman.   These officials declare that plaintiff grabbed Lt. Walker's arm and pulled him towards the cell.

Defendant also submits the deposition of plaintiff in support of his motion.   In his deposition, plaintiff concedes that he refused a cellmate, and that Sergeant Cooke summoned Lt. Walker.   Plaintiff goes on to state that:

A: It took Lieutenant Walker about probably ten, 15 minutes, probably less to get over there.

Q: And were you in your cell?

A: I was in my cell.  I was in my cell.  He called me up closer to the door and I was talking to him by the door.  I was telling him, look, man, just take me to Ad Seg, I don't want no cellie, and he kept on telling me, no, I need you to come down to the program office, and I said what am I going to the program office for.

He said I just want to talk to me.  I said you can talk to me like you're doing here because I want everybody to hear.  He said either you accept the cellie or you accept what you got coming, and I told him, look, man, I'm not going to accept a cellie, and he tried to grab my arm and I moved my arm backwards and I said, look, don't touch me, I'm going to go over here and I'm going to grab all my property, packing up all my property up and I said, look, man, just send me to Ad Seg, I'm not going to accept no cellie.  I don't

15

1   care what you do, but you aren't going to put nobody in my cell.

2   I said call Ad Seg.  He said I'm not calling nobody.  You can
accept this cellie, and I told him, look, man, Walker, I'm not trying
3   to have no problems with you.  When we're arguing back and forth
as I'm going to accept the cellie or not, and I said no, man, I'm not
4   going to do this no more.  You put me through too much already.

5   Right after that, I'm packing my property up.  As I was packing my
property up, I put up all my property on my bed and I'm folding up
6   my clothes, then I'm separating other stuff and I'm unscrewing my
TV and I looked up to go over to put my clothes by the door to go
7   to Ad Seg, because I told him I'm not going to come back to my
cell and I'm not going to accept no cellie.

8
I looked up, I looked up, I just seen fists, bam, and I see Lieutenant
9   Walker and I seen Cook, I seen some other officers and they just
come punching me in my face, grabbing on me, pulling on me,
10   yanking at my shirt.

11   I'm like, man, what's all this?  And they kept on pushing me and
hitting me and grabbing on me, and I pushed and I rammed myself
12   all the way out the door.  I didn't push or hit them, because if I
would have hit them, they would have had serious injuries like I
13   had serious injuries.

14   They would either have busted noses, busted lips or whatever.
Like they said that I assaulted them, which I didn't, and I rammed
15   myself outside the door as a defense for what they did to me when
they took me in that back room and beat me senseless.

16
I rammed myself out there on the tier and when I'm on the tier,
17   they slammed me to the ground.  I had relaxed by the time I got to
the tier.  I figured if I could get somebody to see what they're
18   doing, the I'm okay.

19   They slammed me to the ground.  They had me on the ground.  The
other officer yanked his elbow in my neck.  The other one hit me,
20   Walker kicked me.  Then he put his foot all the way in my face like
with the tip of his feet and he said something else, and the other
21   officer told me to shut the fuck up, and I said you shut up, man,
and the other officer and Walker came and kicked my in my side.
22   It was kind of hard, it was aggressive, but he kicked my in my side.

23   The other officer was stepping on my feet, the other one is pulling
my feet, twisting my legs.  The other officer is pulling my face,
24   pushing my face and pulling it at the same time like he was trying
to pull my eyeballs out.

25
Plaintiff's Deposition at 45:23 - 48:18.
26

The court finds that defendant has not met his burden on summary judgment. Plaintiff's evidence creates a triable issue of fact.  In his deposition, plaintiff clearly states that the use of force was unprovoked by physical conduct.   Though plaintiff concedes that he did not intend to accept a cellmate, he does state that he intended to go to Ad Seg and was packing up his materials when defendant hit him.   Though plaintiff concedes that he pushed the officers out on to the tier, he states that he did so defensively, and once he was on the tier, he went limp. Plaintiff states that despite his non-resistance, defendant and other continued to kick him.  This case turns on whether force was applied in a good faith effort to restore discipline, or sadistically and maliciously for the purpose of causing harm.  An inference can be drawn that plaintiff offered only verbal resistance and was in the process of packing up his material in preparation for his placement in Ad Seg when defendant and others began hitting him.  Where "conflicting inferences may be drawn from the facts, the case must go to the jury." LaLonde v. County of Riverside, 204 F.3d 947, 959(9th Cir. 2000).

Defendant further argues that plaintiff's injuries are *de minimis*.   The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The physical injury "need not be significant but must be more than *de minimis*."  Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002).  The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630.

Defendant argues that plaintiff suffered minor abrasions and bruising.  Defendant contends that there is no evidence in the record that plaintiff received further medical treatment for the injuries suffered on January 5, 2000.   Defendant's Exhibit E includes copies of plaintiff's medical record.  Page 1 of Exhibit E is the Medical Report of Injury or Unusual

1  Occurrence regarding the incident at issue in this case.  Plaintiff was examined on January 5,

2  2000.  Plaintiff was diagnosed with multiple abrasions, a small cut on his lower lip, and a

3  bruised right knee.  Plaintiff was cleaned up with soap and water and released to Ad Seg.  In his

4  deposition, plaintiff takes issue with the medical care he received and discusses his efforts to see

5  a doctor at a later date, but he does not indicate that he suffered any injury other than that noted

6  in the medical report.  In his opposition, plaintiff denies some of defendant's undisputed facts in

7  general, but comes forward with no evidence that he suffered any injury other than that noted

8  above.  The bruises and small cut alleged in this action are *de minimis* injuries.  See Oliver v.

9  Keller, 289 F.3d 623, 627-29 (9th Cir.2002) (holding that back and leg pain caused by sitting on

10  the cement floor, undefined injuries from being assaulted by another prisoner, and a painful

11  canker sore were *de minimis* injuries insufficient to satisfy physical injury requirement under 42

12  U.S.C. § 1997e(e)).  Plaintiff is therefore not entitled to damages for emotional injury.

13  However, Plaintiff is entitled to compensatory and punitive damages, damages which plaintiff

14  has specifically pled in the March 29, 2004, first amended complaint.   Oliver, 289 F.3d at 630.

15            Accordingly, IT IS HEREBY ORDERED that:

16  1.    Defendant's motion for summary judgment is DENIED;

17  2.    Plaintiff's request for damages based on emotional distress is STRICKEN from this

18        action; and

19  3.    This action is referred to the Magistrate Judge for further pretrial proceedings.

20

21  IT IS SO ORDERED.

22  **Dated:    March 29, 2006**              **/s/ Anthony W. Ishii**
    0m8i78                          UNITED STATES DISTRICT JUDGE

23

24

25

26